**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                  No. CR 19-2855 JB

ERIC ARELLANO,

     Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on the Defendant's Sealed Sentencing Memorandum, filed August 20, 2021 (Doc. 147)("Sentencing Objection"). The primary issue is whether the Court should apply the vulnerable victim enhancement pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3A1.1(b)(1), because Arellano's victims were undocumented immigrants. The Court concludes that the vulnerable victim enhancement is appropriate, because the United States has demonstrated by a preponderance of the evidence that Arellano's victims did not speak English, were undocumented, and were in need of transportation, and thus, that the victims were vulnerable. Consequently, the Court will overrule the objection in Arellano's Sentencing Objection.

On August 5, 2019, police officers received a telephone call from a relative of an undocumented immigrant about a group of immigrants that were being kidnapped and extorted. See Presentence Investigation Report ¶ 11, at 5, filed February 25, 2021 (Doc. 124)("PSR"). The relative informed police that they received a text message requesting $4,000.00 for the undocumented immigrant, RF, to be safely transported from Albuquerque, New Mexico, to Dallas, Texas. See PSR ¶ 11, at 5. The officers traced the cellular telephone signal for the person who

sent the text message to an address on Esther Avenue in Albuquerque.  See PSR ¶ 11, at 5.  Officers went to the house on Esther Avenue where they found another undocumented immigrant, IC, who informed officers that she was in a ride share from California to Texas, and that IC's family members received the same text messages as RF's relatives, demanding $4,000.00.  See PSR ¶ 13, at 5.  Officers then traced RF's cellular telephone to the Studio 6 Hotel in Northeast Albuquerque.  See PSR ¶ 14, at 6.  Officers arrived at the Studio 6 Hotel, where they encountered Arellano's co-Defendant, Ramiro Perez, who informed officers that Arellano and the group of undocumented immigrants were in room 265.  See PSR ¶ 14, at 6.  Officers entered room 265 and discovered five men, including RF.  See PSR ¶14, at 6.  United States Customs and Border Protection ("USCBP") determined that the individuals were present illegally in the United States and took the undocumented immigrants into custody.  See PSR ¶ 15, at 6.  After law enforcement officers executed a search warrant on the room, the officers identified Arellano as a person of interest.  See PSR ¶ 17, at 6.  In an interview with Andrew Danko, a resident of the Esther Avenue home, Danko informed police that Arellano "brought 'a good handful' of people" to the house.  PSR ¶ 25, at 7 (quoting Danko).  Danko told police that, on August 5, 2019, Arellano brought a group of people to the Esther Avenue house and noted that none of the people in the group spoke English.  See PSR ¶ 25, at 7.  Arellano admitted that he had "arranged with an unknown female to receive a group of illegal aliens on August 5, 2019."  PSR ¶ 29, at 8.  Further, "according to Arellano, one of the aliens asked if he would transport them to their final destination for $1,000.00.  Arellano responded he would do it for whatever available money the aliens had on them and that he did this for cheaper prices than what other smugglers charged."  PSR ¶ 30, at 8.  "Arellano has admitted to (and confirmed by the case agent) to planning this and prior alien smuggling ventures on at least two previous occasions."  PSR ¶ 31, at 8.

On August 27, 2019, a Grand Jury charged Arellano with (i) Count 1: Conspiracy to Transport Illegal Aliens; and (ii) Counts 2-4: Transporting an Illegal Alien and Aiding and Abetting. See Indictment, filed August 27, 2019 (Doc. 10). On September 11, 2019, a Superseding Indictment charged Arellano with (i) Count 1: Conspiracy to Take Hostages, in violation of 18 U.S.C. § 1203(a); (ii) Counts 2-4: Hostage Taking and Aiding and Abetting, in violation of 18 U.S.C. § 1203(a) and 18 U.S.C § 2; and (iii) Count 6: Conspiracy to Transport Illegal Aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). See Superseding Indictment, filed September 11, 2019 (Doc. 17). On December 10, 2020, Arellano pled guilty to Count 3 of the Superseding Indictment for Hostage Taking and Aiding and Abetting, in violation of 18 U.S.C. § 1203(a) and 18 U.S.C. § 2. See Plea Agreement ¶ 3, at 2, filed December 10, 2020 (Doc. 109). Specifically, in his plea, Arellano admitted

> On or about August 5, 2019, in Bernalillo County, in the District of New Mexico, and elsewhere, the defendants [and] I intentionally detained, and threatened to injure, and to continue to detain another person, specifically, E. E., in order to compel a third person to pay ransom money as a condition for the release of E.E.

Plea Agreement ¶ 7, at 3. On February 25, 2021, the United States Probation Office ("USPO") filed its Presentence Investigation Report. See PSR at 1. In the PSR, the USPO recommends a 2-level enhancement on Arellano's sentence pursuant to U.S.S.G. § 3A1.1(b)(1), because Arellano's offense involves a vulnerable victim. See PSR ¶ 41, at 10 ("The defendant knew or should have known the victim of the offense was a vulnerable victim; therefore, two levels are added. USSG § 3A1.1(b)(1).").

Arellano objects to the vulnerable victim enhancement's application, contending: "The status of the victim as an immigrant without [a] particularized finding of vulnerability pertaining to an individual victim is not appropriate." Sentencing Objection at 5. Further, Arellano argues,

"[a]liens in the United States as a class are not always vulnerable victims."  Sentencing Objection

at 5.  In response, the United States contends that the case's facts demonstrate that Arellano knew

his victims were particularly vulnerable, because of the victims' "language problems, unfamiliarity

with the laws of the United States, the cultures from which the victims came, and their illegal

status."  United States' Ex Parte Sentencing Memorandum and Response to the Defendant's

Objection to the Presentence Report at 5, filed August 23, 2021 (Doc. 149)("Response").

        The United States Sentencing Guidelines § 3A1.1 states: "If the defendant knew or should

have known that a victim of the offense was a vulnerable victim, increase by 2 levels."  U.S.S.G.

§ 3A1.1.  Application Note 2 clarifies that a "vulnerable victim" is "a person (A) who is a victim

of the offense of conviction and any conduct for which the defendant is accountable under § 1B1.3

(Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition,

or who is otherwise particularly susceptible to the criminal conduct."  U.S.S.G. § 3A1.1 cmt 2.

"[T]he vulnerable victim enhancement cannot be based solely on the victim's membership in a

certain class; the sentencing court is required to make particularized findings of vulnerability,

focusing on the individual victim and not the class of persons to which the victim belonged."

United States v. Smith, 133 F.3d 737, 749 (10th Cir. 1997).  "Not only must there be particularized

evidence of a victim's vulnerability, but the evidence must also distinguish the victim as atypical

of the usual targets of the relevant criminal conduct."  United States v. Caballero, 277 F.3d 1235,

1251 (10th Cir. 2002).  In United States v. Caballero, 277 F.3d at 1251, the United States Court of

Appeals for the Tenth Circuit upheld the district court's vulnerable victim enhancement

application where the district court "identified the victims' language problems, unfamiliarity with

the laws of the United States, the cultures from which the victims came, and their illegal status as

the basis for dubbing them 'vulnerable.'"  277 F.3d at 1251 (quoting U.S.S.G. § 3A1.1).

Here, the Court concludes that the United States demonstrates by a preponderance of the evidence that Arellano knew the individuals he kidnapped in this case were vulnerable victims. First, Danko, a resident of the Esther Avenue home, attested to the fact that none of the undocumented immigrants in the group spoke English.  See PSR ¶ 25, at 7.  Second, Arellano knew that the immigrants in the group were undocumented.  See PSR ¶ 29, at 8.  Third, Arellano knew that the undocumented immigrants needed transportation, because one of the immigrants asked Arellano if he would transport them to their final destination for $1,000.00.  See PSR ¶ 30, at 8.  That Arellano was aware that the immigrants in the group were undocumented, did not speak English, and were in need of transportation to arrive in Texas demonstrates that Arellano knew the victims were "unusually vulnerable" when he attempted to extort their family members for $4,000.00 to transport them to Texas.  U.S.S.G. § 3A1.1 cmt 2.  See United States v. Caballero, 277 F.3d at 1251 (upholding the vulnerable victim enhancement's application, in part, because the victims did not speak English and had illegal status).  Consequently, the Court concludes that the United States has demonstrated by a preponderance of the evidence that Arellano knew his victims were vulnerable, and that the vulnerable victim enhancement should apply.

**IT IS ORDERED** that the objection in the Defendant's Sealed Sentencing Memorandum, filed August 20, 2021 (Doc. 147), is overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Fred J. Federici
  Acting United States Attorney
Norman Cairns
Samuel A. Hurtado
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Leon Encinias
Leon Felipe Encinias Attorney at Law
Albuquerque, New Mexico

      *Attorney for the Defendant*